UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61509-CIV-BLOOM/VALLE

CARLOS RODRIGUEZ,

    Plaintiff,

-vs-

HIDAY & RICKE, P.A., JOSEPH MICHAEL ECKELKAMP and DODGE ENTERPRISES, INC.,

    Defendants.
_____/

**PRELIMINARY REQUEST BY THE MEDIATOR THAT THE COURT CLARIFY ITS MARCH 6, 2015 ORDER DIRECTING THE MEDIATOR TO FURNISH AFFIDAVIT**

**AFFIDAVIT OF MEDIATOR, SAMUEL L. HELLER**

**THE MEDIATOR'S PRELIMINARY REQUEST FOR CLARIFICATION**

    The undersigned Mediator, Samuel L. Heller, requests that the Court recognize with regard to the Court's consideration of Plaintiff's pending Motion to Set Aside Mediation Agreement and Mediation Report (Document 53), that Mediator Heller has (a) a duty as an officer of this Court to fully comply with all orders entered by this Court; but, also has (b) an additional duty as a licensed attorney and licensed mediator to honor and fully comply with all of Florida's rules and statutes affecting the mediation process.

    The dilemma Mediator Heller has when he addresses how he is to fully comply with

the Court's March 6, 2015 Order directing that he furnish an affidavit is presented by Sec. 44.405[1], Florida Statutes (2014). Specifically:

As indicated in Heller's affidavit below, he vigorously contests and denies the truthfulness of all of Plaintiff, Rodriguez's allegations that Heller in any way whatsoever abused the mediation process and committed any of the wrongful acts alleged by Mr. Rodriquez. Heller believes, however, that this Court will conclude that testimony must be received at an evidentiary hearing because courts never engage in trial by affidavit; and that at such hearing the Court is going to want to hear from the persons testifying more than mere denials of the truthfulness of what others have said in affidavits, i.e., the Court will probably want to know precisely who said what during the subject daylong mediation that took place on February 3, 2015.

---

[1]   **44.405 Confidentiality; privilege; exceptions.—**

(1) Except as provided in this section, all mediation communications shall be confidential. A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel. A violation of this section may be remedied as provided by s. 44.406. If the mediation is court ordered, a violation of this section may also subject the mediation participant to sanctions by the court, including, but not limited to, costs, attorney's fees, and mediator's fees. (emphasis added)

\* \* \*

(4)(a) Notwithstanding subsections (1) and (2), there is no confidentiality or privilege attached to a signed written agreement reached during a mediation, unless the parties agree otherwise, or for any mediation communication:

\* \* \*

5. Offered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation; or (emphasis added)

\* \* \*

*Page 2 of 17 Pages*

As an officer of this Court and a licensed attorney for some fifty-five years, Heller very much wants to discharge his obligation to at all times honor and respect the sworn word and preserve the integrity of our Court system; and he therefore, in this instance, Heller welcomes the opportunity to appear before Your Honor and testify fully and completely as to what took place at the mediation. In order for Heller to do so – and at the same time not violate Section 44.405, Florida Statutes 2014, by testifying about what otherwise are clearly, privileged "mediation communications," Heller requests that this Court make a preliminary determination (presently or at the commencement of the evidentiary hearing on March 20, 2015) that:

(1) Plaintiff, Carlos Rodriguez, by virtue of his filing his Motion to Set Aside Mediation Agreement And Mediation Report and his supporting Affidavit (relating therein in detail his version of various alleged mediation communications), has unconditionally waived whatever privilege he and the other mediation participants appearing at said mediation would otherwise have under Section 44.405, to prevent others (including Heller) from testifying with regard to any and all mediation communications uttered that day; and that

(2) Heller and all other mediation participants involved herein who shall testify at this Court's March 20, 2015 hearing may testify fully and completely as to any and all mediation communications uttered that day because the Court has determined that all such testimony that will then be received shall be deemed by this Court to have been "[o]ffered for the limited purpose of establishing or refuting legally recognized grounds for voiding or reforming a settlement agreement reached during a mediation."

Until Your Honor has determined whether the Court wishes to clarify the Court's March 6, 2015 Order directing Heller to furnish and affidavit (as requested herein by Heller), his

*Affidavit presented below is restricted and limited so as to avoid Heller presently violating Section 44.405, Florida Statutes 2014.*

\* \* \*

## AFFIDAVIT OF MEDIATOR, SAMUEL L. HELLER

STATE OF FLORIDA

§§

COUNTY OF BROWARD

Before me, the undersigned authority, personally appeared this day Samuel L. Heller, who, being first duly sworn, made the following statements under oath:

1. I, Samuel L. Heller, am at the present time and was at all of the times described below in this affidavit an attorney at law, licensed to practice law in Florida continuously since I was admitted to The Florida Bar October 26, 1960. Additionally, since approximately September 20, 1994 I have been and am at the present time a duly Florida licensed circuit court civil mediator. [I spent 19 years (September, 1994 – October 31, 2013) as a contract mediator with Mediation, Inc. in Fort Lauderdale, Florida; and have been engaged in the same capacity by Upchurch Watson, White & Max ("the Upchurch firm") in Plantation, Florida from November 1, 2013 through and including the present date.] I retired from thirty-nine years of trial practice approximately fifteen years ago and since that date have worked exclusively as a civil trial mediator in South Florida. This affidavit is made upon my personal knowledge and each and every one of the facts stated herein are true and correct; and this affidavit is being furnished to the Court as directed by the Court's March 6, 2015 Order.

*Page 4 of 17 Pages*

2.      I am now going to respond to the statements that were made by Plaintiff, Carlos Rodriguez in two papers he has filed with this Court: his Affidavit in Support to Motion to Set Aside Settlement Agreement ("Rodriguez Affidavit," Document 54) and Plaintiff's Motion to Set Aside Mediation Agreement and Mediation Report ("Rodriguez Motion To Set Aside Settlement," Document 53), both of which were filed February 11, 2015. [Throughout the remainder of this affidavit I will refer to Plaintiff as either "Mr. Rodriquez" or as "Carlos."]

3.      For clarity I am dividing the remainder of this affidavit into two Parts:

Part A, deals with the issue raised by Mr. Rodriguez of how the charge for my services as the mediator should be allocated by our firm, Upchurch Watson, White & Max, as between the one *pro se* plaintiff (Rodriquez) and the three defendants represented by one lawyer (Jeffrey R. Becker). This issue was first raised by Mr. Rodriquez several months before the February 3, 2015 mediation and (as explained below in detail) was completely resolved several weeks before the mediation. Notwithstanding that resolution of the issue, Mr. Rodriquez has now raised the same issue again by stating in Paragraph 10 of his Motion to Set Aside Settlement:

> Also the rules state that the parties are supposed to split mediator's fees in equal part. Plaintiff was force (*sic*) to pay half of the cost for mediation when there were four parties in this case. Plaintiff paid a total of 1440 at a rate of 400 per hour, and DODGE paid the other half. The other two parties, Mr. Eckelkamp and HIDAY paid NOTHING.

Part B deals with Mr. Rodriguez's allegations that I was guilty of mediator misconduct in the February 3, 2015 mediation conference and allegedly exerted duress on him, allegedly refusing to let him leave the mediation conference and allegedly forcing or coercing him to sign the County Court Settlement Agreement.

*Page 5 of 17 Pages*

## Part A (How to Allocate the Charge for the Mediation):

4. My practice and the Upchurch Firm's policy is that when I or any of our other mediators is informed of the fact that a mediation is to be conducted at a future date and one or more parties in the lawsuit to be mediated are not represented by counsel, our personnel will routinely inform the *pro se* litigant that he or she must deposit with our office in advance of the mediation a sum that represents that party's pro-rata share of the estimated cost of the mediation. Consistent with this policy, one of my two Mediation Case Managers, Heidi Cohen, E-Mailed Mr. Rodriguez on September 25, 2014, informing him that his half of the estimated fee for the three-hour mediation that had been scheduled for February 3, 2015 was $600.00; and that the Upchurch Firm would have to have received this sum by Mr. Rodriguez's credit card or check no later than January 5, 2015.

5. Our firm did not receive the requested $600.00 deposit from Mr. Rodriguez last fall and when Heidi Cohen E-Mailed him again on January 9, 2015 that we had to have his $600.00 deposit no later than Monday, January 12, 2015 at 4 P.M., Mr. Rodriguez E-Mailed Heidi back that he still felt 50/50 was unfair[2] and that he wanted me (Samuel L. Heller) to call him to discuss the matter. I did, in fact, telephone him at his (305) 494-0265 number during the week of January 12 – January 16, 2015 and either then had one long phone discussion or two phone discussions in a two day period of time. I then told Mr. Rodriguez the following:

   (a) Before discussing anything with Mr. Rodriguez about the mediation fee allocation dispute I told him that I was aware of the fact that his District Court lawsuit against the defendants involved an alleged violation of the Fair Debt Collection Practices Act and an alleged

---

[2] Mr. Rodriguez told our personnel and me that he believed he should pay one-fourth of the mediation charge and the three Defendants should pay the remaining three-fourths of the fee.

violation of the similar Florida statute dealing with wrongful collection practices by a debt collector. I also told him that over some twenty years I had mediated a substantial number of these cases that persuaded me that this is a somewhat complex law area; and that I could not recall any instance in which I had handled a mediation wherein the plaintiff-complaining debtor had not been represented by a lawyer experienced in handling these FDCPA cases.

6. I then told him that in every mediation I am scheduled to handle (regardless of the kind of lawsuit) wherein a plaintiff or defendant is not represented by a lawyer when the scheduled mediation is first brought to my attention, it is my practice to always, always recommend to that *pro se* party that he or she should promptly hire a lawyer to advance and protect that party's interests in the forthcoming mediation., because, I explained to Mr. Rodriguez, he (Mr. Rodriguez) needed to fully understand that even though I happen to be an attorney, I cannot – under any circumstance whatsoever – give him legal advice at the mediation conference or tell him in any way what he should do or not do about settling or deciding not to settle when the mediation is held. And I also told him my view was based on an observation I had made in many mediations over some twenty years that, generally speaking, plaintiffs who may have filed the lawsuit being mediated on their own without an attorney should – absolutely – hire an attorney to be there to participate as their lawyer during the mediation because, e.g., Mr. Rodriguez's lawyer will ordinarily be able to do a much better job responding to the arguments that are going to be made at the mediation by the defendants' lawyer (Jeffrey Becker) than Mr. Rodriguez himself could make.

7. I even told Mr. Rodriguez that if he needed to have the scheduled mediation postponed to give him enough time to hire a lawyer I was confident that Mr. Becker would agree to such postponement or that (if Mr. Becker didn't agree) Mr. Rodriguez could file a motion with the

District Court to request such postponement. Mr. Rodriguez told me that he did not need to hire a lawyer; he directed my attention to the FDCPA concepts and law points that were already set forth in his complaint against the defendants – a complaint that he was positive was on firm legal ground because, according to Mr. Rodriguez, he had carefully researched the law and believed that the District Court would agree with him (Mr. Rodriguez) that the defendants knew they were violating the FDCPA because they were trying to enforce collection on a 2003 county court judgment the defendants knew was void because they knew that he (Mr. Rodriguez) had never been served with summons and complaint in that county court lawsuit; and that if that county court judgment was thrown out and held to be void, the defendant law firm's client (Dodge Enterprises, Inc., present holder of the Sears Roebuck and Co. 2003 County Court judgment against a Carlos Rodriguez) would be time- barred under the applicable Statute of Limitations from now (in 2015) filing a second suit against Mr. Rodriguez.

(a)   Turning then to the fee-allocation dispute, I told Mr. Rodriguez that it has always been my policy; it is our mediation firm's policy; and my understanding from discussions with other mediators that consistently, when several defendants in a lawsuit are represented by one lawyer and there is one plaintiff on the other side, the mediation fee is split into two halves. The reason for this is that the several defendants all have a common interest and that is the reason mediators will universally treat those multiple defendants as a single party. I gave him in this January, 2015 phone discussion several examples: if a husband and wife were defendants represented by one lawyer and a company or a person was the sole plaintiff, the husband and the wife would be treated as one party and the mediation charge would be split in two. I also related that if an employer owned a truck that caused an injury to a person, if that injured person filed suit as a

plaintiff and sued the company that owned the truck and was the employer of the driver who had caused the accident and also joined in that suit as an additional defendant, the employee-driver, those two defendants would be treated as one party and the mediation charge would again be split into two halves.

    8.  Similarly, I explained to Mr. Rodriguez in our pre-mediation phone discussion that Mr. Becker had told me that the three defendants all had a common interest in that they were respectively the law firm and the lawyer-employee of the firm who had written one or more letters allegedly in violation of the FDCPA; and that the letters had been written on behalf of the client (Dodge Enterprises) whose involvement as the owner of the allegedly void judgment against Rodriguez also possibly subjected Dodge Enterprises (according to Rodriguez's complaint) to liability in favor of Mr. Rodriguez on the latter's FDCPA claim. I told Mr. Rodriguez that I could be in error but this view expressed by attorney Becker seemed to be a correct view; and I particularly stressed to Mr. Rodriguez that he was free to disagree and insist that this dispute be resolved by the District Court ***before*** any mediation conference would be held.

    (a)  I also told Mr. Rodriguez that in order for me to conduct the mediation he and attorney Becker would have to agree on how the cost of the mediation would be allocated and I suggested that he telephone Mr. Becker if he wanted Becker's clients to agree with him on some split other than 50/50. Mr. Rodriguez remained silent when I made the suggestion. I then told him that he had several other options:

      (i)  There was no necessity that he use me or the Upchurch Firm to conduct the mediation; I told him that he could contact the various mediation firms here in South Florida and perhaps find another mediator that would be willing to allocate the charge as he (Mr.

Rodriguez) insisted.

    (ii)  I also told him that if he wanted to delay the scheduled February 3, 2015 mediation so that he could file an appropriate motion to bring this fee-allocation dispute to the attention of the District Judge so that the District Court would resolve the dispute before the mediation, there would be no problem if he told me he wanted to postpone the mediation. Again, Mr. Rodriguez remained silent in response to these suggestions I made except that at the end of this January, 2015 conversation about the fee allocation he said that he did not want to delay the mediation and that he would now go ahead and make the $600.00 deposit and asked me to fax to him our firm's credit card form by which he could make a $600.00 credit card payment.

    (iii)  Because I had some problems with my fax machine at my home-office I was unable to fax him the credit card form until Wednesday, January 21, 2015. At that time I faxed him my two page typed message and an attached Upchurch Firm credit card form which I had made out for a $600.00 deposit; a copy of this message and credit card form is not available at this time. I was then informed (within a day or two after I had faxed Mr. Rodriguez these papers) by Heidi Cohen that Mr. Rodriguez had, in fact, completed the credit card form and thus made a $600.00 deposit as we had requested.

  (b)  From the time (late January, 2015) our firm received Mr. Rodriguez's $600.00 deposit through and including the mediation I conducted for the parties on February 3, 2015, Mr. Rodriguez never made any further statement to me or to anyone else that I heard or knew about to the effect that he was unhappy with the mediation fee split of 50/50, his half of which he paid in full right after the mediation conference.

  (c)  My practice over the past twenty-one years has been to always send

out an E-Mail several days before a scheduled mediation conference to each side's lawyer indicating (A) the papers I would appreciate receiving prior to the mediation so that I can prepare for the mediation conference by having some working knowledge of what the lawsuit is all about; and (B) also reminding each side's counsel (in those cases, e.g., non-personal injury cases, non-medical malpractice cases, wherein the fee for the mediation will be collected at the conclusion of the mediation), that we will calculate the mediation fee at the conclusion of the mediation conference and counsel (and any *pro se*) should either bring a credit card or law office check so that the Upchurch Firm can collect the fee at that time. Consistent with this policy on February 1, 2015 I sent Mr. Rodriguez and attorney Becker my standard form E-Mail messages and I am attaching as Exhibit A to this Affidavit, my E-Mail to Mr. Rodriguez sent that day.

9.  In response to this message Mr. Rodriguez sent me the next day a very large volume of court papers and exhibits (totaling some 68 pages). [I also received a very large volume of court papers and exhibits from Mr. Becker at the same time.] Nowhere in the five messages Mr. Rodriguez sent me with these papers was there any mention of any complaint by him about the 50/50 fee split.

(a)  Further evidencing the fact that Mr. Rodriguez had no issue before his recent court filing herein about the fee split, after the mediation I calculated that I had expended a total of 7.2 hours in mediation services and that by applying the $400.00 hourly rate I informed each side or party that the total fee for each side's half of the mediation charge would be $1,440.00[3]. I

---

[3] My policy in every mediation is to instruct our firm's billing personnel to send a "Paid" Invoice (detailing precisely what services were performed by me, the time expended for same, etc.) to each party immediately after the mediation has been concluded; accordingly, on February 4, 2015 our firm sent such $1,440.00 Paid Invoice to Mr. Rodriguez, a copy of which is attached as Exhibit B to this affidavit.

*Page 11 of 17 Pages*

then informed Mr. Rodriguez right after the mediation conference that after deducting his $600.00 deposit he then owed the Upchurch Firm $840.00 and he thereupon (at the mediation conference) signed and handed to me an additional (second) credit card form for his $840.00 balance due the Upchurch Firm. Not only did he not complain about the 50-50 fee split; he thanked me profusely for my work as mediator that day and left with the fully executed Settlement Agreement in his possession.

10. I was therefore stunned when I learned that when Mr. Rodriguez filed on February 10, 2015 his Motion to Set Aside Settlement Agreement he had not only made a series of 100% false accusations of alleged misconduct on my part (my detailed response to which is addressed below in this Affidavit in Part B); now, for the first time, in this Motion to Set Aside, out of the blue he was re-stating the fall, 2014 complaint about the fee allocation dispute. This was the same dispute which had been previously resolved in January, 2015 by agreement of Mr. Rodriguez and the defendants and the Upchurch Firm, as I have explained above.

**Part B (Responding to Mr. Rodriguez's Allegations of Mediator Misconduct):**

11. Rodriguez's Allegation:

Mediation was program (*sic*) for 9 am and was finally held at around 11.30 am due to defendants Attorney Mr. Jeffrey (*sic*) Becker late arrival. (Rodriguez Motion To Set Aside Settlement, ¶ 2; and Rodriguez Affidavit, ¶¶ 1-3)

My Response: There are minor inaccuracies in this Allegation: the notice of mediation our firm served on Mr. Rodriguez and the Defendants' counsel scheduled the mediation to commence at 10:00 a.m. (not 9:00 a.m.). My recollection and my notes indicate that Mr. Becker and the Defendants' representative arrived together at 11 AM. However, since I was informed by our firm's personnel

early that morning that Mr. Becker's flight was delayed and Mr. Rodriguez was at our Miami mediation office at 10:00 a.m., I actually began the mediation at 10:00 a.m., meeting in private with Mr. Rodriguez during the hour before Mr. Becker arrived. [That is the reason that each side's invoice indicated that the mediation began exactly at 10:00 a.m.]

12. Rodriguez's Allegation:

> Plaintiff informed Mr. Heller that he was leaving at 1 p.m. because he was supposed to return back to work. (Rodriguez Motion To Set Aside Settlement, ¶ 3)

My Response: There are inaccuracies in this Allegation because Mr. Rodriguez never said that he was "leaving at 1 P.M." nor did he ever tell me that he "was supposed to return back to work."

(a) Whereas, I have no difficulty denying in this affidavit what Mr. Rodriguez claims he said say during the mediation conference (because I don't believe my denials of such statements would be an affidavit statement as to "a mediation communication"), until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

13. Rodriguez's Allegation:

> Mr. Heller asks Plaintiff if he could stay for an extra 30 minutes; request Plaintiff accepted. (Rodriguez Motion To Set Aside Settlement, ¶ 4)

My Response: This allegation is totally and completely false.

(a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr.

Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

  14. Rodriguez's Allegation:

Plaintiff felt pressured, threatened and coerced into signing Mediation agreement. (Rodriguez Motion To Set Aside Settlement, ¶ 5 and Plaintiff was pressured, threatened and coerced into signing Mediation agreement. (Rodriguez Motion To Set Aside Settlement, Last Sentence of WHEREFORE request for relief on Page 2 of the Motion)

My Response: This allegation is totally and completely false.

  (a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

  15. Rodriguez's Allegation:

Mr. Heller stated that "that day an agreement had to be reach (*sic*) or otherwise the judge would be getting very angry". (Rodriguez Motion To Set Aside Settlement, ¶ 6) and (Rodriguez Affidavit, ¶ 7)

My Response: This allegation is totally and completely false.

  (a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

16. Rodriguez's Allegation:

Mr. Heller stated that the offer of paying 6000 was fair and that if Plaintiff would not accept he would have to pay 10,146.50 plus fees and costs. (Rodriguez Motion To Set Aside Settlement, ¶ 7) and (Rodriguez Affidavit, ¶ 8)

My Response: This allegation is totally and completely false.

(a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

17. Rodriguez's Allegation:

Mr. Heller also stated that Plaintiffs did not have a case in federal court," your case in this court is 100% lost, I check the papers and they have not done anything wrong." (Rodriguez Motion To Set Aside Settlement, ¶ 8) and (Rodriguez Affidavit, ¶ 9)

My Response: This allegation is totally and completely false.

(a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

18. Rodriguez's Allegation:

Mr. Heller stated that" the court is going to make you pay until today February 3, 2015 at 12:37 p.m. the amount of 10,146.50 and after this there is no agreement." (Rodriguez Motion To Set Aside Settlement, ¶ 9) and (Rodriguez Affidavit, ¶ 10)

My Response: This allegation is totally and completely false.

   (a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

   19. Rodriguez's Allegation:

> Also the rules state that the parties are supposed to split mediator's fees in equal part. Plaintiff was force (*sic*) to pay half of the cost for mediation when there were four parties in this case. Plaintiff paid a total of 1440 at a rate of 400 per hour, and DODGE paid the other half. The other two parties, Mr. Eckelkamp and HIDAY paid NOTHING.

My Response: I have responded in detail to this Allegation in Paragraphs 1 – 6, *supra,* on pages 3 - 7.

   20. Rodriguez's Allegation:

> Plaintiff attempted to leave the office several times and was stop by Mr. Heller saying that an agreement had to be reach. Plaintiff was forced to stay against his will. (Rodriguez Motion To Set Aside Settlement, ¶ 11)

My Response: This allegation is totally and completely false.

   (a) Until such time as this Court shall clarify its March 6, 2015 Order as requested above, I respectfully decline to presently state in this affidavit whatever else that Mr. Rodriguez said to me and whatever I said to him (regarding the aforementioned allegation) during the mediation conference because all such affidavit statements would violate Section 44.405, Florida Statutes 2014.

_____
SAMUEL L. HELLER

SWORN TO AND SUBSCRIBED BEFORE ME by Samuel L. Heller, to me well know to be the person who signed the foregoing Affidavit and who furnished DRIVER'S LICENSE as identification.

WITNESS MY HAND AND OFFICIAL SEAL at Fort Lauderdale, Florida, this _13_ ____, day of March, 2015.



DONNA GOLDSTEIN
MY COMMISSION # EE 155884
EXPIRES: February 15, 2016
Bonded Thru Budget Notary Services

### CERTIFICATE OF SERVICE

I hereby certify that I have on this the _13_ day of _March_ 2015, electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is also being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing, to wit: Carlos Rodriguez, 1455 N. Treasure Dr., 5H, North Bay Village, FL 33141 and via email to carrod5959@hotmail.com and to Jeffrey Becker via email jbecker@hidaymricke.com.

_____
Samuel L. Heller, Mediator
Mediator # 5788 CRA
Upchurch Watson White & Max
900 South Pine Island Rd., Suite 410
Plantation, FL 33324
Phone: 954-423-8856 Fax: 407-661-5743
Cell Phone: 954-865-9900
E-Mail: sheller@uww-adr.com

# Sam Heller

| | |
|---|---|
| **From:** | Sam Heller |
| **Sent:** | Sunday, February 01, 2015 12:46 PM |
| **To:** | 'Carlos Rodriguez (carrod5959@hotmail.com)' |
| **Subject:** | Mediation of Rodriguez v. Hiday & Ricke on Tuesday, February 3rd, 2015 at 10:00 a.m.; UWWM #14SLH-092 |
| **Contacts:** | Carlos Rodriguez |

Mr. Carlos Rodriguez:

To Maximize Our Opportunity To Settle Your Case, Please E-Mail to Me Today (sheller@uww-adr.com)The Papers Described Below:

**Part 1 - Papers I Need:** The pending complaint, answer, any cross-claims, counter-claims, 3rd party complaints & any dispositive pre-trial orders and proposals for settlement. Please send copies of pertinent exhibits, e.g.:

(1) Key agreements, (proposed but unexecuted settlement agreements), pertinent insurance policy excerpts, warning labels, notices, default notifications, any document whose validity, meaning or effect is disputed, critical medical reports, expert reports.

(2) Exhibits, excerpts from depositions: if voluminous, please send just the first and last pages & the pages I need to read - perhaps (if time permits) highlighting pertinent excerpts.

(3) **[Optional But Helpful - A Summary]:** A summary or any demand letter (outlining damages, etc.) you previously sent to opposing counsel. If any settlement discussions have taken place in recent months, please tell me who last offered what moneys to whom and when such offers were exchanged.

**Part 2 - How Upchurch Watson White & Max Handles Payment For The Mediation (Commercial, Non-PI Cases):** As you know, Upchurch Watson White & Max only bills you and opposing counsel. While I acknowledge that you have already paid Upchurch Watson White & Max a deposit of $600.00, in the event more than three hours is expended by me on this mediation (including whatever time I spend before the mediation conference reviewing the papers you and attorney Becker send me) we will need to collect from each side one half of the total charge for the mediation (reduced, in your case, by the $600 deposit you have sent us). Therefore, since

**EXHIBIT "A"**

**payment for the mediation is due at the conclusion of the mediation conference, please be sure that you bring to the mediation a credit card or cash. I will not be allowed to accept your check.**

The total due will be computed at the end of the mediation conference. As indicated in our firm's engagement letter sent to you, my services are billed at $400.00 per hour divided by the number of parties participating in the mediation. [There is no additional administrative charge.]

Thanks for getting me the materials I've requested above. I'll do everything I can to make this a successful mediation so that your case will be settled.

Sam Heller, Mediation Counsel
Mediator / Arbitrator / Special Master
Upchurch Watson White & Max Mediation Group
Fellow, National Academy of Distinguished Neutrals
E-Mail: sheller@uww-adr.com
Cell Phone: (954) 865-9900



**Upchurch Watson White & Max**
MEDIATION GROUP

900 S. Pine Island Rd.
Suite 410
Plantation, FL 33324

Telephone: 954-423-8856
Toll Free: 800-863-1462
Facsimile: 954-334-2838
Website: www.uww-adr.com

February 4, 2015

PAID
2-4

Carlos Rodriguez, Pro Se
carrod5959@hotmail.com
305-494-0265



****************************************I N V O I C E****************************************

Re:     Rodriguez vs Hiday & Ricke
        Invoice No.:**14SLH-092 - A**

Date of conference:  February 3, 2015

Mediation services rendered by Samuel L Heller, comprising 6.00 hours for the mediation conference (10:00 a.m. to 4:10 p.m.); .70 hours (prior to the mediation conference) for the mediator's review of the pleadings and mediation summary materials furnished to the mediator by counsel for the parties and also includes phone discussions and E-Mail exchanges with Mr. Rodriguez and attorney Becker; and .50 hour for the mediator's preparation (prior to the mediation conference) of the initial draft of the Settlement Agreement. Total: 7.20 hours @$200.00/hr for each of the two parties mediating = $1,440.00 total charge to each party

Mediation fee (50% of total charge).................................. $1,440.00

PAYMENT FOR SERVICES IS DUE UPON RECEIPT. PLEASE MAKE CHECKS PAYABLE TO UPCHURCH WATSON WHITE & MAX (Federal I.D. No. 59-3415029) and RETURN A COPY OF THIS INVOICE WITH YOUR PAYMENT OR INDICATE THE INVOICE NUMBER ON YOUR CHECK. **PLEASE FORWARD PAYMENT TO THE PLANTATION OFFICE ADDRESS ABOVE.**

THANK YOU!



EXHIBIT B